## CIRCUIT COURT OF FAIRFAX COUNTY

Thomas Roscigno

v.

James A. DeVille
and T & T International
Industries, Inc.

Case No. (Chancery) 113996

BY JUDGE J. HOWE BROWN

April 6, 1992

This matter is before the Court on three motions presented to the Court by the complainant in the above-referenced case, Thomas Roscigno. After hearing oral argument on the issues, the Court took the case under advisement.

Complainant first moves the Court to require the corporate respondent to be represented by counsel. Pursuant to the Unauthorized Practice Rules:

> A corporation . . . does not have the same right of appearance before a tribunal as an individual and may not be represented before a tribunal by its officers, employees or agents who are not duly authorized to practice law in Virginia. A corporation can be represented only by a lawyer before a tribunal, with respect to matters involving legal conclusions,

examination of witnesses or preparation of briefs and pleadings.

UPC 1–3, Pt. 6, § I, Rule 1, Rules of Supreme Court of Virginia. Therefore, the Court will enter an order directed to the corporate defendant which confirms that such defendant cannot appear before this court without counsel.

Complainant also moves for partial summary judgment on Count I of the Amended Bill of Complaint. In Count I, complainant requests this Court to grant various equitable relief based on enforcement of certain statutory rights. Specifically, the allegations in Count I are that the notice of the Special Shareholder's Meeting did not contain a recommendation as more fully set forth in Code § 13.1–724(B)(1), and there was no approval of the disputed transaction by the required amount of disinterested stockholders under § 13.1–725. In support of his motion, complainant argues that since DeVille had rights of proxy to vote complainant's shares, the sale of all the assets of the corporation to an entity in which DeVille had an interest but complainant did not is, as a matter of law, a breach of a fiduciary relationship. The Court finds, however, that there still remain in dispute genuine issues of material fact concerning the circumstances surrounding the notice, the meeting, the vote and the transaction. For this reason, the motion is denied.

The complainant also moved to bifurcate the trial. Specifically, the complainant requests that the Court separate the liability issues and the request for equitable relief from the claims for monetary damages in Counts III, IV and V. The Court finds that bifurcation would promote the interest of justice in this cause and grants the motion.

## June 1, 1992

This matter came before this Court on April 1, 2 and 6, 1992, for trial on the issues of liability and the request for equitable relief based on the plaintiff's Amended Motion for Judgment. After hearing the evidence submitted and the argument of counsel, the Court took the case under advisement.

Plaintiff Roscigno is a stockholder of defendant T & T International Industries, Inc., a Virginia corporation which was formed for the purpose of constructing an office building in Herndon. Two other stockholders of the corporation were William Klene and a developer named DeLuca, and upon DeLuca's death, his estate.

On July 31, 1987, Roscigno and defendant DeVille entered into an agreement. Pursuant to the terms of this agreement, DeVille agreed to advance $99,060 for Roscigno to purchase shares from the Estate of DeLuca, so that Roscigno would become the majority shareholder. Roscigno then put his stock in trust and granted his voting rights on the stock to DeVille by proxy for a period of three years. Roscigno also executed a promissory note in which he pledged to DeVille all of his shares of T & T. The eventual goal of the agreement was to effect a division of the share ownership of T & T on a 50–50% ownership basis and a 40–60% profit split between DeVille and Roscigno.

DeVille was to provide the credit and funding necessary to develop the project but was entitled to a return of any funds he advanced or contributed to the purchase of shares prior to any split of profit between the parties. Moreover, if the project was sold, DeVille was to receive a return of his advanced funds for the maintenance of the property, his time and expenses incurred on behalf of the corporation, and his contributions for the purchase of shares prior to the split of the profit.

DeVille was to have complete control over the construction or resale of the Herndon property, as well as the business of T & T. DeVille and his son became the officers and directors of the corporation. For various reasons, the property was never developed. On October 31, 1989, DeVille sent notice to the T & T shareholders for a special meeting to be held on November 27, 1989. The stated purpose of the meeting was to vote on the sale of T & T's principal asset, "Victoria Square," and the dissolution of the corporation due to a negative net worth and income. Additionally, DeVille prepared a balance sheet reflecting an indebtedness of the corporation to him for $534,033.

The meeting was held on November 27 and 28, 1989, and a resolution was passed, with DeVille voting Roscigno's stock by proxy and consent by the other shareholders. The result was the sale of the Victoria Square asset to a general partnership of which DeVille was a partner and the dissolution of the corporation. Roscigno received no monetary distribution from the sale or dissolution. Roscigno's attorney was present and voiced an objection to the propriety of the action taken, but he did not expressly seek to revoke the proxy previously given.

Roscigno has brought this suit against DeVille and T & T. In Count I, he seeks the enforcement of certain statutory rights and equitable remedies, including the appointment of a receiver. In Count II, Roscigno alleges an improper use of the proxy and asks to have the resolutions passed at the shareholders' meeting voided. In Count III, Roscigno alleges a breach of contract and of fiduciary obligations by DeVille; and, in Count IV, Roscigno claims that DeVille was negligent.

Roscigno objects to the sufficiency of the notice of the special shareholders meeting pursuant to Code § 13.1–724(B)(1). Section 13.1–724 concerns the sale of substantially all of a corporation's assets other than in the usual and regular course of business, subject to the proposed transaction being adopted by the board of directors and approved by the shareholders. Although subsection (B)(1) does require either a recommendation or communication to the shareholders by the board of directors, that statement does not need to be in the notice.

The notice required to authorize a § 13.1–724 transaction is instead covered by subsection (D) of that code section and by § 13.1–658. The court finds that the notice of the special shareholder's meeting sent in this case fulfills the requirements of those two code provisions. It contains both a statement that the stockholders will be voting on the sale of the Victoria Square asset and also that the possible purchaser will be DeVille, as well as complying with the date, time and place requirements.

Roscigno also alleges that this was an unauthorized, affiliated transaction. An affiliated transaction as defined under the Code includes any sale, except for transactions in the ordinary course of business, to or with any interested shareholder of any assets of the corporation having an aggregate fair market value in excess of five percent of the corporation's consolidated net worth, or the dissolution of the corporation if proposed by or on behalf of an interested shareholder. Code § 13.1–725. An interested shareholder means any person that is the beneficial owner of more than ten percent of any class of the outstanding voting shares of the corporation. *Id.*

A person is deemed to be a "beneficial owner" of voting shares as to which such person has directly or indirectly through any contract arrangement, understanding, relationship or otherwise voting powers, which includes the power to vote or to direct the voting of

voting shares. *Id.* DeVille was an interested shareholder. He was the beneficial owner of Roscigno's shares by virtue of his proxy rights entitling him to vote those shares. Thus, the transaction by which the corporation sold the principal asset to an entity of which DeVille was a partner constituted an affiliated transaction.

An affiliated transaction may nevertheless be authorized. Where, as here, the interested shareholder's determination date (date on which the interested shareholder became an interested shareholder) is less than a period of three years from the affiliated transaction date, Code § 13.1–725.1 sets forth two requirements before the corporation can engage in such action: (1) the affirmative vote of a majority (but not less than two) of the disinterested directors; and (2) the affirmative vote of the holders of two-thirds of the voting shares other than shares beneficially owned by the interested shareholder. Although the second requirement was met here, the first requirement could not have been since there were only two directors, and at least one if not both were interested in the transaction.

Roscigno also seeks to assert dissenter's rights. A shareholder is entitled to dissent from and obtain payment of the fair value of his shares in the event of consummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual and regular course of business, including a sale in dissolution. Code § 13.1–730. This right, however, only extends to those shareholders who are entitled to vote on the sale or exchange. Since under the proxy assignment Roscigno was not entitled to vote, and since he did not revoke that assignment, he is not entitled to exercise dissenter's rights.

Roscigno alleges in Count II that his proxy was improperly voted because it was revoked. Under general rules of law, a proxy is irrevocable if coupled with an interest or given as security. *See* 18A Am. Jur. 2d *Corporations* § 1090 et seq. This is so whether or not the instrument so provides, unless there is an express stipulation to the contrary or the proxy is for an illegal purpose. *See* 18 Am. Jur. 2d *Corporations* § 1091. These rules apply "apart from statute," however. *See* 18A Am. Jur. 2d *Corporations* § 1090. The Virginia Code provides specific rules for when a proxy is to be considered irrevocable. Under § 13.1–663, "[a]n appointment of a proxy is revocable by the shareholder unless the appointment form conspicuously states that it is irrevocable *and* the appointment is coupled with an interest." (Emphasis added.)

An appointment coupled with an interest is statutorily deemed to include the appointment of a pledgee or a person who purchased or agreed to purchase the shares. Code § 13.1–663(D). On the face of the agreement which assigns the proxy right to DeVille, Roscigno pledges his shares to DeVille. This proxy was clearly accompanied by an interest. The Virginia statute is set forth in the conjunctive, however, not the disjunctive, and thus it also requires a conspicuous statement that the proxy is irrevocable in addition to the coupling of an interest.

The defendants argue that the statements in the agreement that the proxy is granted to DeVille "for a period of three years," and that they shall expire "three years from the date of this agreement" provide the required conspicuous statement of irrevocability. These statements merely extend the statutory period of proxy rights of eleven months to a longer period of time. *See generally* Code § 13.1–663(C) (providing that a proxy, which is normally revocable, is valid for eleven months unless a longer period is expressly provided in the appointment form). The mere extension of time in the agreement, standing alone, without the accompanying interest, would not be considered to be a conspicuous statement of irrevocability. Under the express and clear words of the Virginia statute, thus, the proxy rights were not irrevocable because there was no conspicuous language to that effect.

The court finds, though, that the proxy was not properly revoked prior to the meeting. A shareholder can revoke revocable proxies at any time and it is not necessary that a proxy be revoked in the exact manner provided in the instrument giving the proxy. 18A Am. Jur. 2d *Corporations* § 1093. Generally, if a proxy remains revocable, it may be revoked by the simple act of the stockholder of record appearing at the shareholders' meeting and voting or offering to vote the stock. 18A Am. Jur. 2d *Corporations* § 1094. Roscigno did not appear at the meeting, and his attorney, although voicing an opinion as to the propriety of the action, did not ever specifically revoke the proxy and was not authorized to vote Roscigno's shares.

Roscigno also claims that there was a breach of the fiduciary relationship formed by the proxy agreement. Under general principles of law, a proxy creates an agency relationship governed by agency law. 18A Am. Jur. 2d *Corporations* § 1069. Through a general proxy, which allows the proxy holder to do all that the principal might do if

present, the proxy confers on the holder an unlimited exercise of discretion. *See* 18A Am. Jur. 2d *Corporations* § 1082. The defendants argue that no agency relationship was created because the agreement gave DeVille the right to complete control over the Herndon construction project. The right to develop the construction project without control, however, is different from the right to vote the shares.

There is Virginia case law which supports this court's conclusion that a proxy holder is an agent of the shareholder. In *Mut. R. Fund Ass'n v. Taylor*, the Virginia Supreme Court discussed a situation in which the shareholder claimed that the proxy holder had voted against his interest:

> It is unquestionably the duty of an agent to act for the interest of his principal to the best of the agent's judgment and belief, and if his acts are so clearly against such interest as to show that he acted otherwise, his act is void, and the principal is not bound, except to an innocent party.

*Mut. R. Fund Ass'n v. Taylor*, 99 Va. 208, 219 (1901). In that case, the court concluded that the proxy holder had not voted contrary to the interests of the shareholder.

An agent is a fiduciary with respect to the matters within the scope of his agency. *H-B Partnership v. Wimmer*, 220 Va. 176, 179 (1979). A fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446 (1984). Based upon the general law, upon *Taylor*, and upon the later cases, the court concludes that a proxy holder is in a fiduciary relationship with the shareholder to the extent of the matters within the scope of his agency. DeVille breached his fiduciary duty by voting the shares which he held as proxy to his benefit.

Additionally, an officer of a corporation, in his dealings with the corporation, has the same duty of fidelity which arises in dealings between a trustee and a beneficiary of the trust. *Giannotti v. Hamway*, 239 Va. 14, 24 (1990); *Adelman v. Conotti Corporation*, 215 Va. 782, 789 (1975). Corporate officers and directors have a fiduciary duty in their dealings with shareholders and must exercise good faith in such dealings. *Glass v. Glass*, 228 Va. 39, 47 (1984). Thus,

DeVille also acted as a fiduciary for Roscigno based on his position in the corporation as a director and officer.

An officer or director may deal with his corporation if the transactions are open, fair and honest, and the corporation is represented by competent and authorized agents. *Adelman*, 215 Va. at 790. The unbending rule is that the director must act in the utmost good faith, and this good faith forbids placing himself in a position where his individual interest clashes with his duty to the corporation. *Id.* A director of a private corporation cannot directly or indirectly, in any transaction in which he is under a duty to guard the interests of the corporation, acquire any personal advantage, or make any profit for himself, and if he does so, he may be compelled to account therefor to the corporation. *Giannotti*, 239 Va. at 24.

Although such a transaction is not *ipso facto* voidable, it is *prima facie* presumed to be invalid and the fiduciary must bear the burden of proving that the transaction was valid. *Adelman*, 215 Va. at 789; *see also Giannotti*, 239 Va. at 24. Otherwise, the transaction is voidable at the option of the corporation and may be set aside without showing actual injury. *See Adelman*, 215 Va. at 790.

DeVille did not show at trial that he was entitled to $534,033 from the Corporation. The Agreement under which DeVille was operating did not provide for management fees and development fees and the like which DeVille claimed. DeVille was not entitled to take over the stock of the Corporation for this alleged indebtedness.

The court finds that in this case, DeVille has presented insufficient evidence to prove the amount of indebtedness to him he claims was owed by the corporation. Therefore, he has not met his burden of proof to show that the sale of the Victoria Square asset to his partnership and the corresponding dissolution of the corporation without any distribution to the shareholders due to debts allegedly owed by the corporation to him was fair and characterized by the utmost good faith.

Roscigno also claims that DeVille breached the agreement and his fiduciary duty through mismanagement of the development of the property. The terms of the parties agreement provided that DeVille was to have complete control of the development of the property. There is a prudent man standard in fiduciary administration:

> [I]n . . . managing property for the benefit of another, [a] . . .
> fiduciary . . . shall exercise the judgment of care under the

circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

Code § 26–45.1. The court finds from the evidence presented that DeVille made reasonable business judgments in preparing to develop the property, which, while by no means perfect, did not rise to the level of breach of fiduciary duty or mismanagement.

Based on the foregoing analysis, the court rules that the transaction by which the Victoria Sale asset was sold to DeVille and the corporation was dissolved without a distribution to Roscigno should be set aside.